UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARILYN GOLISANO,<br><br>Defendant | Criminal No.  21cr10009<br><br>Violations:<br><br>Count One: Theft Concerning Programs Receiving Federal Funds<br>(18 U.S.C. § 666(a)(1)(A))<br><br>Counts Two - Seven: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Count Eight: Aggravated Identity Theft<br>(18 U.S.C. § 1028A)<br><br>Forfeiture Allegation:<br>(18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

1. The Boston Police Department ("BPD") was the police department for the City of Boston and had the authority to enforce the criminal laws of the Commonwealth of Massachusetts and the local rules and ordinances of the City of Boston.

2. Defendant, Marilyn GOLISANO, was employed as a clerk for the Detectives Unit in District A-1 of the BPD. District A-1 covers downtown Boston, Charlestown, the North End, the West End, Beacon Hill, Chinatown, Bay Village and the financial district.

3. GOLISANO's duties included answering phones, doing payroll, data entry, and other tasks supporting the work of District A-1 Detectives.

4. GOLISANO was also responsible for collecting, reviewing, and organizing all overtime slips for the District A-1 Detectives Unit, including her own, for submission to BPD's payroll department.

5. GOLISANO was commonly the last person to collect and review overtime slips from the District A-1 Detectives Unit before they were submitted to the BPD payroll department.

### GOLISANO's Overtime Hours

6. At all times relevant to the Indictment, the District A-1 Detectives Unit was overseen by a Lieutenant Detective ("Supervisor A").

7. Supervisor A oversaw the work of GOLISANO and was responsible for approving the overtime hours worked by GOLISANO.

8. During her tenure as the clerk for the District A-1 Detectives Unit, GOLISANO was regularly approved to work a four-hour overtime block each Sunday, from 7:30 a.m. through 11:30 a.m. During this time, GOLISANO was responsible for, among other things, ensuring that cases opened over the weekend were entered into the BPD's computer system and assigned to Detectives.

9. BPD paid its employees at a rate of one and a half times their regular rate of pay for overtime hours.

10. From time to time, GOLISANO would also be approved to work overtime shifts at the conclusion of her regular weekday shift at 4:00 p.m. These overtime shifts, which were two or four hours long, would include tasks such as assisting District A-1 command staff with special projects, among other things.

11. Supervisor A's regular practice was to approve only one or two weekday overtime shifts per month for GOLISANO.

12. For each overtime shift, whether on Sunday, a weekday or Saturday, GOLISANO was required to work a minimum of one hour and forty-six minutes of overtime to collect two hours of overtime pay; and to work a minimum of three hours and forty-six minutes of overtime

to collect four hours of overtime pay.

13. To collect overtime pay, GOLISANO was required to complete an "Overtime Slip." These Overtime Slips required employees to enter and/or obtain:

   a. the employee's name and unique BPD identification number;
   b. a three digit code for the type of overtime performed;
   c. the date that the overtime was worked;
   d. the time that the overtime began and ended;
   e. the amount of "Actual Hours Worked;"
   f. a signature of a supervisor certifying that the overtime had been worked along with the supervisor's BPD identification number; and
   g. a signature line for the commander authorizing the overtime and payment along with the commander's BPD identification number.

14. GOLISANO was required to honestly and accurately report the above information, including the number of overtime hours that GOLISANO actually worked.

15. In 2015, GOLISANO was paid a total of $12,888 for 306 overtime hours.

16. In 2016, GOLISANO was paid a total of $15,096 for 348 overtime hours.

17. In 2017, GOLISANO's duties did not change, GOLISANO's rate of pay did not significantly increase, and no significant new overtime hours were approved by Supervisor A.

18. In 2017, however, GOLISANO obtained a total of approximately $26,461 in BPD overtime pay for 610 hours of overtime.

19. In 2018, GOLISANO's duties did not change, GOLISANO's rate of pay did not significantly increase, and no significant new overtime hours were approved by Supervisor A.

20. In 2018, however, GOLISANO obtained a total of approximately $33,952 in BPD overtime pay for 754 hours of overtime.

## Scheme to Defraud

21. From at least 2017 through early 2019, GOLISANO engaged in scheme to defraud the BPD by submitting false and fraudulent Overtime Slips for overtime hours that BPD

supervisors had not approved and that GOLISANO had not worked. As part of the scheme, GOLISANO submitted false and fraudulent Overtime Slips upon which GOLISANO forged the signatures of her supervisors.

22. Supervisor A reviewed hundreds of Overtime Slips submitted by GOLISANO during the period of at least 2017 through early 2019 and identified dozens of Overtime Slips where his signature had been forged.

23. Two other BPD supervisors, "Supervisor B" and "Supervisor C," reviewed Overtime Slips submitted by GOLISANO in 2018 and identified several Overtime Slips where their signatures had been forged.

24. On several occasions when GOLISANO claimed to be working overtime shifts in District A-1 in downtown Boston, GOLISANO was miles away from Boston, according to her cellphone's geolocation records.

25. For example, on or about January 10, 2018, a date for which GOLISANO submitted an Overtime Slip claiming to have worked an overtime shift from 4:00 p.m. to 8:00 p.m. in District A-1 in downtown Boston, GOLISANO's cellphone records placed GOLISANO in Wakefield at approximately 3:52 p.m., and in Melrose at various times from approximately 4:12 p.m. to approximately 6:48 p.m.

26. Similarly, on or about December 31, 2018, another date on which GOLISANO submitted an Overtime Slip claiming to have worked an overtime shift from 4:00 p.m. to 8:00 p.m. in District A-1 in downtown Boston, GOLISANO's cellphone placed her in Melrose at various times between approximately 2:45 p.m. and 5:32 p.m.

27. In 2017, GOLISANO fraudulently obtained approximately $11,094 for overtime

hours that were not approved and that she had not worked.

28. In 2018, GOLISANO fraudulently obtained approximately $18,090 for overtime hours that were not approved and that she had not worked.

### Interstate Wires

29. Citizens Bank is a bank headquartered in Providence, Rhode Island, which operates in the Commonwealth of Massachusetts, among other states. Citizens Bank processes all BPD electronic funds transfers and direct deposits for BPD employees' salaries and overtime pay.

30. In order to initiate the payment of BPD payroll, BPD transfers to the City of Boston a file containing the information about its employees and their hours worked. The City of Boston, which controls the salary rates, then electronically transfers a file to Citizens Bank, in Providence, Rhode Island, containing information about the bank and amount of money to be transferred to each employee for the work performed.

31. After the files are processed, deposits are made, from Citizens Bank in Rhode Island, to the accounts of the BPD employees in the amounts designated by BPD.

32. At all times relevant to the events described in the Indictment, GOLISANO was paid her salary and overtime pay via direct deposit to her account with East Boston Savings Bank ("EBSB"), which operates in the Commonwealth of Massachusetts.

### BPD's Receipt of Federal Benefits

33. The United States Department of Transportation ("DOT") is an agency of the United States that provides hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States. In this capacity, DOT provides funding to assist and enhance enforcement of traffic regulations on public roadways for

the purpose of increasing public well-being and safety.

34. For each of the calendar years 2017 through 2019, the BPD received annual benefits from the DOT in excess of $10,000. DOT provided these funds through numerous federal grants.

35. The United States Department of Justice ("DOJ") is an agency of the United States that provided hundreds of thousands of dollars in funding on a yearly basis to law enforcement authorities to benefit the residents of the United States.

36. For each of the calendar years 2017 through 2019, BPD received annual benefits from the DOJ in excess of $10,000. DOJ provided these funds through numerous federal grants.

## COUNT ONE
### Theft Concerning Programs Receiving Federal Benefits
### (18 U.S.C. § 666(a)(1)(A))

The Grand Jury charges:

37. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

38. From on or about January 2017 through on or about January 2019, in Boston, in the District of Massachusetts and elsewhere, the defendant,

### MARILYN GOLISANO,

being an agent of the Boston Police Department, embezzled, stole, obtained by fraud and otherwise without authority knowingly converted to the use of a person other than the rightful owner and intentionally misapplied, property valued at $5,000 or more, that was owned by, and was under the care, custody, and control of the Boston Police Department, which received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan guarantee, insurance or other form of Federal assistance in any one-year period.

All in violation of Title 18, United States Code, Section 666(a)(1)(A).

## COUNTS TWO - SEVEN
## Wire Fraud
### (18 U.S.C. § 1343)

The Grand Jury further charges:

39. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

40. From in or about January 2017 through in or about January 2019, in Boston, in the District of Massachusetts and elsewhere, the defendant,

### MARILYN GOLISANO,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud BPD, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 2 | January 19, 2018 | A Citizens Bank (RI) BPD payroll direct deposit of $980.76 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |
| 3 | March 2, 2018 | A Citizens Bank (RI) BPD payroll direct deposit of $1486.08 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |
| 4 | March 30, 2018 | A Citizens Bank (RI) BPD payroll direct deposit of $1018.05 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |
| 5 | July 13, 2018 | A Citizens Bank (RI) BPD payroll direct deposit of $1210.86 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |
| 6 | October 26, 2018 | A Citizens Bank (RI) BPD payroll direct deposit of $834.43 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |
| 7 | January 11, 2019 | A Citizens Bank (RI) BPD payroll direct deposit of $1,216.86 to defendant's East Boston Savings Bank (MA) account for overtime hours that were not approved and were not worked |

All in violation of Title 18, United State Code, Section 1343.

## COUNT EIGHT
## Aggravated Identity Theft
## (18 U.S.C. § 1028A(a)(1))

The Grand Jury further charges:

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1 to 36 of this Indictment.

42. In or about December 2018, in Boston, in the District of Massachusetts and elsewhere, the defendant,

## MARILYN GOLISANO,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343, as charged in Count Seven.

| Count | Approximate Date | Description |
|---|---|---|
| 8 | December 31, 2018 | Forged Signature of Supervisor A on Fraudulent Overtime Slip |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Grand Jury further finds:

1. Upon conviction of embezzlement from an agency receiving federal benefits, in violation of Title 18, United States Code, Section 666, as set forth in Count One, and/or wire fraud, in violation of Title 18, United States Code, Section 1343, as set forth in Counts Two through Seven, the defendant,

MARILYN GOLISANO,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. The property to be forfeited includes, but is not limited to, the following asset:

   a. $29,184, to be entered in the form of a forfeiture money judgment.

2. If any of the property described in Paragraph 1, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 1 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON


_____
MARK J. GRADY
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS


District of Massachusetts: January 12, 2021
Returned into the District Court by the Grand Jurors and filed.

/s/ Thomas F. Quinn  1/12/21  @ 3:34pm.
DEPUTY CLERK