UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA           )<br>                                                          )<br>            v.                                          )<br>                                                          )<br>MARILYN GOLISANO,                  )<br>                        Defendant.            ) | Crim. No. 21-cr-10009-NMG |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through United States Attorney Rachael S. Rollins and the undersigned Assistant U.S. Attorney, requests that on March 14, 2022, the Court sentence defendant, Marilyn Golisano, (hereinafter, "defendant" or "Golisano"), to the agreed upon: 90 day term of imprisonment; a 36 month term of supervised release, with the first 90 days to be served in home confinement; a fine at the low end of the Guideline range (unless the Court finds that the Defendant is not able to pay a fine); $29,000 in restitution; and a $700 special assessment.

## Facts

Golisano was a clerk for the Area A-1 Detectives Unit of the Boston Police Department. Golisano's duties included answering phones, doing payroll, data entry, and other tasks supporting the work of District A-1 Detectives. As relevant here, Golisano's role in processing the payroll for the District A-1 detectives meant that she was the last individual handling overtime slips before they were submitted to the payroll department.

Lieutenant Detective A ("Lt. Det. A") was Golisano's supervisor at all relevant times. During this period, Golisano was routinely approved for approximately seven four-hour overtime shifts each month. This included a four-hour overtime shift each Sunday, from 7-11 a.m., and,

1

as work and circumstances required, one or two additional overtime shifts to occur at the conclusion of Golisano's shift during the week, from 4-8 p.m.

Up through 2016, Golisano earned as much as $15,096 in overtime compensation in a single year. Beginning in 2017, however, despite the fact that: Golisano's rate of pay did not change significantly; Golisano's duties did not change significantly; and no new overtime hours were approved; Golisano's overtime compensation increased – first to $24,461 in 2017 and then to $33,952 in 2018. Stated slightly differently, despite there being no significant change to her duties or to her approved hours, between 2016 and 2018, Golisano's overtime hours more than doubled, increasing from 350 hours in 2016, to 610 hours in 2017, and then to 754 hours in 2018.

In March of 2019, Lt. Det. A noted discrepancies in Golisano's overtime hours which led to an investigation by the BPD.[1] Upon reviewing Golisano's overtime submissions, Lt. Det. A quickly learned that Golisano had been submitting overtime slips for far more overtime hours than he had authorized her to work. Further, Golisano had forged Lt. Det. A's signature on many of those overtime slips.[2] During the course of the investigation, it would later be learned that she had forged the signatures of two other supervisors on overtime slips as well.

Despite Golisano's work being primarily conducted using BPD computers, the login information from the BPD computer system revealed that Golisano had not been logged into the BPD computer system, at all, during many of the overtime shifts she claimed to have been working in 2017 and 2018. Additionally, on some occasions, cellphone location evidence places

---

[1] GOLISANO resigned/retired in the Spring of 2019 as these events came to light.

[2] Specific examples of the overtime slips and the forged signatures have been included in the Pre-Sentence Report. (¶14).

Golisano in Melrose during periods in which she claimed to be working overtime at the District A-1 Police Station in downtown Boston.

Pursuant to her scheme, Golisano was paid approximately $29,000 for overtime hours that she did not work ($11,000 in 2017 and $18,000 in 2019).

### Advisory Sentencing Guidelines

The parties' positions with respect to the Sentencing Guidelines are set forth on page 2 of the Plea Agreement:

(i) in accordance with USSG § 2B1.1(a)(1), defendant's base offense level is 7, because the offense of conviction has a statutory maximum term of imprisonment that 20 years or more;

(ii) in accordance with USSG § 2B1.1(b)(1)(C), defendant's offense level is increased by four levels because the offense involved a loss in excess of $15,000 but less than $40,000;

(iii) in accordance with USSG § 3B1.3, defendant's offense level is increased by two levels because the offense involved the abuse of a position of trust;

(iv) in accordance with USSG § 3E1.1, the U.S. Attorney agrees to recommend that the Court reduce by two levels defendant's adjusted offense level because of defendant's prompt acceptance of personal responsibility for the offense conviction in this case.

Accordingly, the parties and Probation have calculated the total offense level to be 11. See PSR, ¶29-37. Golisano's criminal history category is I, which results in a GSR of 8 to 14 months' imprisonment. See PSR, § 81. As part of the Plea Agreement, should the Court accept the plea and impose sentence in accord with the parties' agreement, Count Eight, charging aggravated identity theft, will be dismissed.

**Argument**

The government asks this Court to impose the agreed upon disposition: a 90 day term of incarceration; a three-year term of supervised release with the first 90 days to be spent in home confinement; a fine at the low end of the Guideline Range ($4,000, unless the Court determines that the defendant is unable to pay), restitution of $29,000, and a $700 special assessment.[3]

Golisano has committed a serious crime and a term of incarceration is appropriate. She manipulated and abused the trust placed in her by her employer, the Boston Police Department, falsifying her overtime hours in order to steal tens of thousands of dollars. In carrying out this crime, Golisano first earned, and then betrayed, the hard-earned trust of the detectives and other law enforcement officers for whom she worked – made all the worse by the fact that these were individuals who would ordinarily be responsible for investigating such crimes. It was a calculated and persistent scheme to defraud, with acts in furtherance of the scheme occurring on dozens of occasions, over multiple years. And, by forging the signatures of multiple supervisors, she made people with who she worked on a day-to-day basis unknowing, and unwilling, dupes for her scheme.

Though this crime is both serious and deserving of an incarcerative sentence, the government has also considered factors that weigh in favor of Golisano. Most notably, Golisano

---

[3] The agreement, if accepted by the Court, contemplates dismissal of the aggravated identity theft charges which would have otherwise carried a two-year mandatory minimum. The government's decision to enter into this agreement recognizes that while the defendant's conduct falls within that statute, based upon the facts and circumstances of this case, the sentence requested by the parties in their plea agreement is sufficient to serve the interests of justice and represents and appropriate sentence under the factors set forth in 18 U.S.C. §3553(a).

is sixty-eight years old, and has no other criminal history. (PSR, ¶40). She was, until her actions in this case, gainfully employed for over thirty years by the BPD. (PSR, ¶70).

The government has also consulted with the victims in this mater, including not only the BPD, but also the individual supervisors involved. While none have chosen to submit an impact statement to this Court, all have agreed that the proposed disposition is acceptable and appropriate.

Finally, though the parties' recommendation is below the low end of the Guidelines Range (8 months) for the crimes to which the defendant has agreed to plead guilty, the combination of the proposed incarceration and home confinement sentence, totaling six months, represents a two-month departure from the low end of the Guidelines.[4] In the view of the government, this departure/variance is warranted by, among other things, the defendant's age and absence of prior criminal history.

---

[4] For an offense falling within Zone B of the Guidelines, USSG §5C1.1(c) allows a combination of incarceration and home confinement to serve in lieu of a wholly incarcerative sentence.

For these reasons, including: the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the conduct; the government asks the Court to impose: a 90 day term of incarceration; a three-year term of supervised release with the first 90 days to be spent in home confinement; a fine at the low end of the Guideline Range (unless the Court determines that the defendant is unable to pay), restitution of $29,000, and a $700 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:   */s/ Mark Grady*
      MARK GRADY
      Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Mark Grady*
MARK GRADY
Assistant U.S. Attorney

Date:   March 9, 2022