```
               IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MASSACHUSETTS
```

UNITED STATES of AMERICA,

                v.                                    Case No. 1:21-cr-10009 NMG

MARILYN GOLISANO,
     Defendant.

### DEFENDANT'S SENTENCING MEMORANDUM

#### Preliminary

Defendant, Marilyn Golisano, by her counsel, Kevin L. Barron, Esq., respectfully offers the Honorable Court this Sentencing Memorandum in support of the 90-day sentence of incarceration followed by 90 days of home confinement with dismissal of the §1028A count, all as set forth in the parties' September 7, 2021 Plea Agreement (Doc. 35) under F.R.Crim.P. Rule 11(c)(1)(C).

#### Summary

The sentence of the Plea Agreement is not greater than necessary to serve the purposes of the Sentencing Reform Act. 18 USC §3553(a). This sentence creates sufficient deterrence and promotes respect for the law under all the statutorily relevant circumstances. This is especially true because of the (1) characteristics of the defendant, as demonstrated in her excellent career history, (2) because of the harsh collateral

consequences of conviction through pension forefeiture and recoupment and (3) the negligible risk of reoffense.

ARGUMENT

POINT I:
A SENTENCE THAT PROMOTES
RESPECT FOR THE LAW

It would be hard to overstate how painful this sentencing is for defendant.  She spent most of her long career as a Boston Police Department secretary working for East Boston Detectives fighting Italian organized crime.  She earned and kept her supervisors' complete confidence to work the most important cases and was entrusted with the most sensitive law enforcement intelligence.  See letters of Massachusetts Police Sergeant William McGreal (Ret.) and Boston Police Detective Sergeant Joseph Fiandaca (Ret.).  Docs. 40 & 42.

Mrs. Golisano comes from a unique generation of law enforcement now retired from service.  The relationship of defendant's co-workers to one another and to the community they protected was close and personal.  The targets defendant's unit investigated came from the same background as defendant and the officers she worked for.  Supervisors needed to have absolute confidence that their subordinates would not compromise the investigation.  As her supervisor of 23 years, Det. Sgt. Joseph Fiandaca, Ret., notes in his letter to the Court:

> both Marilyn and myself were products of growing up,
> working and living in East Boston. I know I crossed

>paths with many individuals I arrested, as I'm sure Marilyn encountered numerous targets of our investigations. She was entrusted with confidential information that was never shared outside of those who possessed the need to know.

Doc. 42, p. 2.

This time in Mrs. Golisano's career was especially stressful for someone from a neighborhood whose violent racketeers were under an investigation she participated in every day.  MSP  Sgt Wm. McGreal's letter describes the intrigue and violence that were part of Boston crime lore and Mrs. Golisano's work day.  Doc. 40.  The Detective Unit's work continued through a period of LCN internecine violence between Boston and Providence factions and included murders and even attacks on police in her East Boston precinct.  *Id.*

Mrs. Golisano faithfully performed the hard work of gathering and compiling intelligence records in the days before image processing and powerful modern databases.  She knew everything her supervisors knew, so it was essential that she never violate their trust - and she did not.  While some of the work like preparing search warrants may have had satisfying moments, most of it was tedious, stressful and had to be completed under deadline - like "computerizing all Field Interrogation & Observation forms made out by uniform officers and detectives."  Fiandaca letter, Doc. 42 at 1.

POINT II:
HARSH COLLATERAL CONSEQUENCES
SHOULD BE CONSIDERED
IN FASHIONING SENTENCE

Not only is Mrs. Golisano's reputation damaged, but she will very likely suffer crushing financial consequences far in excess of the $29,000.00 §2B1.1 loss amount in this case.  The Boston Retirement Board, through its counsel, Padric Lydon, Esq., has informed Mrs. Golisano by letter – and informed counsel in phone conversations – that the Massachusetts Public Employee Retirement Administration Commission will deem Mrs. Golisano's pension forfeit and it will seek recoupment of benefits paid after "final conviction of a criminal offense involving violation of the laws applicable to h[er] office or position". MGL Ch. 32, Sec. 15.  This is a separate penalty over and above fines or restitution.  This means that the Boston Retirement Board may seek not only the disproportionate penalty of forfeiture of Mrs. Golisano's future periodic income payments and health insurance but it will also demand return of approximately $100,000.00 in benefits paid since Mrs. Golisano's forced retirement in March of 2019.

POINT III:

MINIMAL RISK OF REOFFENSE

The defendant is highly unlikely to reoffend.  Mrs. Golisano's life in recent years has been filled with losses, which may offer some explanation of what happened and why it

will not happen again. Mrs. Golisano's offense conduct follows a pattern of older defendants with no criminal or a positive history who inexplicably commit financial crimes in periods of late-in-life stress. She has suffered many losses, a son, her mother and most recently her aunt whom she nursed in the home at end of life.

The United States Sentencing Commission's objective statistics support the above subjective argument against risk of reoffense. While there is no recidivism statistic for female offenders with 0 criminal history points aged over 60, this attempt to calculate it shows that such a statistic would be infinitesimally small. The rearrest rate among female offenders released in 2010 was about one third lower than males across all ages, races and criminal history categories, 36.4% for females as opposed to 52.2% for males. *Recidivism Among Federal Offenders: A Comprehensive Overview*, United States Sentencing Commission, March 2016, p. A-1. The reconviction rate was only 22% as opposed to 38% in males. Without regard to sex or age, offenders in CHC I with a score of 0 points, like Mrs. Golisano, had only a 12% rate of recidivism. *Id.,* p. A-3. Thus, it would be reasonable to conclude that a female defendant's risk of re offense with 0 criminal history points is about two thirds of 12%, or 8%. Once age is accounted for, however, the statistical probability of reoffense begins to vanish. Few statistics are

so closely related and show as clear a correlation as age and recidivism. See, Hunt & Easly, "The Effects of Aging on Recidivism Among Federal Offenders", United States Sentencing Commission, December 2017, p. 30. Offenders of all Criminal History Categories released after age 65 had a re arrest rate of 13.4% and a re incarceration rate of 4.1%. Id.

## CONCLUSION

For the reasons set forth above, the Court should impose the sentence of the Plea Agreement.

Dated: March 9, 2022

Respectfully submitted,
Marilyn Golisano, defendant
By her counsel,
/s/ Kevin L. Barron
Kevin L. Barron, Esq.
50 Congress St. - Ste. 600
Boston, MA 02109
(617) 407-6837

## Certificate of Service

Counsel certifies that he has caused a true copy of this document to be served today through the CM/ECF system of this District on the attorneys for all the parties as set forth in the Notice of Electronic Filing and that no party requires service by other means.

/s/ Kevin L. Barron